**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KENNETH BROBSTON,

                                        Plaintiff,

         - v -                                                    Civ. No. 9:10-CV-242
                                                                       (GLS/RFT)

DEBORAH SCHULT, *Warden, FCI Ray Brook*; MS. HALLADAY,
*Special Investigation Serv., FCI Ray Brook*; MR. HELMS, *Lt.,*
*Former S.I.S., FCI Ray Brook*; HENSLEY, *Supervisor of Industry*;
MR. PETERSON, *Factory Manager of Unicor, FCI Ray Brook*;
MR. DUCKETT, *Correctional Officer, FCI Ray Brook*; MS. DARRAH,
*Unit Manager (Mohawk - B), FCI Ray Brook*; MR. LUCAS, *Case*
*Manager (Mohawk - B), FCI Ray Brook*; and MS. SEPANECK,[1] *Unit*
*Counselor (Mohawk - B), FCI Ray Brook*,

                                        Defendants.

**APPEARANCES:**                                       **OF COUNSEL:**

KENNETH BROBSTON
12247-026
Plaintiff, *Pro Se*
Three Rivers
MC-4
Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 4200
Three Rivers, TX 78071

HON. RICHARD S. HARTUNIAN                    CHARLES E. ROBERTS
United States Attorney for the Northern District of New York    Asst. United States Attorney
Attorney for Defendants[2]
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261

---

[1] According to the Declaration submitted in support of Defendants' Motion to Dismiss or in the alternative for Summary Judgment, the correct spelling of this Defendant's name is "Sepanek" and the Court shall refer to her accordingly.

[2] The United States Attorney has appeared on behalf of all named Defendants, except for Ms. Darrah, upon whom service had not been accomplished primarily because she is no longer employed at FCI Ray Brook. Dkt. No. 18. Upon information and belief, Ms. Darrah has retired. Dkt. No. 29, Notice of Mot., dated Dec. 15, 2010, at p. 1, n.1; *see also infra* Part II.G.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Kenneth Brobston filed this civil rights action, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("Bivens"), against the Defendants claiming his constitutional rights were violated when he was incarcerated at Federal Correctional Institution in Ray Brook ("FCI Ray Brook").  Dkt. No. 1, Compl.  On December 15, 2010, Defendants filed a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56.  Dkt. Nos. 29 & 32.  Plaintiff opposes the Motion.  Dkt. No. 34.  For the reasons that follow, this Court recommends that Defendants' Motion be **granted** and this entire action be **dismissed**.

### I.  BACKGROUND

Unless otherwise indicated, the following facts are well-supported and not reasonably controverted.  *Pro se* Plaintiff Kenneth Brobston is a federal inmate, originally sentenced in the United States District Court for the Central District of Illinois for violating 21 U.S.C. §§ 846, 841(a)(1), & (b)(1)(A) (Conspiracy to Manufacture Methamphetamine).  Dkt. No. 29-5, Robin VanWeelden Decl., dated Nov. 19, 2010, at ¶ 4 & Ex. A (docketed as Dkt. No. 29-6) at pp. 1-4.[3]

On July 6, 2009, while incarcerated at FCI Ray Brook, Plaintiff submitted an Inmate Request to Staff (also known as a "cop out"), complaining about a new prison policy that went into effect on that date and prevented him from leaving the UNICOR factory, where he worked, to go to his dorm during the lunch break.  Dkt. No. 29-8, Jon Hensley Decl., dated Nov. 9, 2010, at ¶¶ 5 & 7; Ex. A.

---

[3] Regarding page number citations to Defendants' Exhibits attached to various Declarations, the Court refers to those numbers automatically assigned by the Court's Case Management Electronic Case Files system.

Plaintiff complained that because he could not return to his dorm, he was forced to share the bathroom with three hundred other people and that there was a shortage of toilet paper. *Id*. He also complained that because he could not freely return to his cell, he had no access to hot water, microwaves, the telephone, or his counselor. *Id*. The policy in issue, implemented *via* Memorandum Notice on June 22, 2009, did not, *per se*, prevent the inmates from returning to their cells during their forty-five minute lunch break, but, for security reasons, if while in their cells the inmates were confined to their housing units because of it being locked down, such inmates could no longer obtain special release from the housing unit in order to return to the UNICOR factory. Hensley Decl. at ¶ 6 & Ex. C.

Defendant Jon Hensley, Ray Brook Superintendent of Industries and Education, responded to Plaintiff's July 6th Complaint, noting that, notwithstanding the new policy, Plaintiff still had access to UNICOR and Recreation toilets and that his other concerns, such as meeting with his counselor or using the telephone, could be met outside his UNICOR working hours. *Id*. at ¶ 7 & Ex. A. IN fact, UNICOR has three inmate restrooms, each with multiple toilets and urinals. *Id*. at ¶ 8.

On July 13, 2009, Plaintiff submitted a second Request to Staff complaining that on two separate dates, July 6th and 9th, there was a shortage of toilet paper at UNICOR. *Id*. at ¶¶ 5 & 9; Ex. B. This complaint was made specifically against Defendants Hensley and CO Duckett for their alleged refusal to give Plaintiff the toilet paper he requested. Hensley Decl., Ex. B. According to Plaintiff's written complaint, Plaintiff alerted Defendant Duckett about the shortage of toilet paper on July 6th, but he refused to give Plaintiff any toilet paper; instead, Plaintiff received a roll from another inmate who overheard the conversation. *Id*. Then, on July 9th, Plaintiff informed Defendants Duckett and Hensley that there was no toilet paper and that he needed to use the

bathroom stressing that it was an emergency.  Plaintiff was denied toilet paper from 7:30 a.m. until

9:00 a.m., and because there was no move scheduled during that time, he could not return to his cell.

*Id*.  Shortly after 9:00 a.m., Defendant Hensley provided Plaintiff with a roll of toilet paper, but en

route to use the bathroom, Plaintiff soiled himself.  *Id*.  Plaintiff further expressed concern in the

"cop-out" that Defendants Hensley and Duckett may be annoyed with him and may be motivated

to retaliate against him.  *Id*.  According to his verified Complaint, after showering and changing his

soiled clothes, Plaintiff informed Mr. Lucas, his Case Manager, and Ms. Sepanek, his Unit

Counselor, about what transpired and requested that his complaints be placed on the record.  Compl.

at ¶ 8.

Defendant Hensley responded to Plaintiff's complaint, indicating that sufficient toilet paper

was issued for the week of July 6-10; specifically, in addition to the normal weekly supply, upon

being informed of the shortage of toilet paper, the factory issued another week's supply.  Hensley

Decl., Ex. B.

At some point while at Ray Brook, Plaintiff had inquired whether he could be transferred to

another facility in Kentucky so that he could participate in a vocational welding program and be

closer to home.  Dkt. No. 29-9, Jackii Sepanek Decl., dated Nov. 19, 2010, at ¶ 5.  As a result of

Plaintiff's inquiry, Case Manager Lucas and the Supervisor of Education consulted with personnel

at FCI Ashland in Kentucky and confirmed that Plaintiff met all the criteria for enrollment in their

welding program.  *Id*.  On July 14, 2009, a Request for Transfer was completed and signed off by

Defendant Lucas, Defendant Barbara Darrah, Plaintiff's Unit Manager, and Defendant Deborah

Schult, FCI Ray Brook Warden.  *Id*., Ex. B.

Plaintiff claims that on July 13, 14, and 15, 2009, Defendants Lucas, Darrah, and Sepanek

denied Plaintiff's requests for "BP.8" forms so that Plaintiff could file a complaint about Defendants Hensley, Duckett, and Peterson, who was the factory manager for UNICOR.[4]  Compl. at ¶¶ 13-18. He further claims that on July 14th, Defendant Lucas told Brobston that he's been receiving complaints about him because of what happened in UNICOR on July 6th and 9th and that he was holding up Plaintiff's transfer papers.  *Id*. at ¶ 15.

On July 27, 2009, Plaintiff was issued an Incident Report, authored by Defendant Peterson, charging Plaintiff with possessing a narcotic in violation of the prison code.  VanWeelden Decl., Ex. F (docketed as Dkt. No. 29-6) at p. 17.  According to that Report, on July 27th, at approximately 1:15 p.m., Defendant Peterson and David Kirby[5] conducted a visual search of Brobston while he was on the UNICOR loading dock.  *Id*.  During this search, Brobston "attempted to stuff a cellophane wad in the floor drain."  *Id*.  At Kirby's direction, Brobston handed over the item, which was taken to the Lieutenant Degon[6].  *Id*. at pp. 17 & 19.  Reportedly, Brobston was asked what the item was and he responded, "it['] s weed."  *Id*.  Lieutenant Degon confirmed that the packets he received contained a green leafy substance and tested positive for marijuana.  *Id*.  Peterson's Incident Report was entered on the Bureau of Prison's ("BOP") computerized system with the notation "SUSPENDED PENDING REFERRAL TO AUSA."  VanWeelden Decl. at ¶ 7 & Ex. G (docketed as Dkt. No. 29-6) at pp. 28-29.  On July 27th, in accordance with BOP policy, Plaintiff was placed in administrative detention within the special housing unit ("SHU") "pending an investigation of a violation of Bureau

---

[4] In his Complaint, Plaintiff stated that on July 15th, he received the BP.8 form from another inmate and began to type it up.  Compl. at ¶ 18.  He does not what the substance of his written complaint concerned nor whether he submitted his form for filing.

[5] David Kirby is the UNICOR Production Foreman and is not named as a defendant in this matter.

[6] Lieutenant Degon is not named as a defendant in this matter.

-5-

regulations." *Id*, Exs. H (docketed as Dkt. No. 29-7) at p. 8 & Ex. I (docketed as Dkt. No. 29-7) at

p. 15.  According to the Administrative Detention Order, written by Defendant Halladay, Plaintiff

received a copy of the notice of administrative detention, as witnessed by S. Degon.  *Id*., Ex. I at p.

15.  However, in accordance with BOP policy, because the BOP investigation into Defendant

Peterson's Incident Report was suspended pending criminal prosecution, there was no requirement

that Plaintiff be provided a copy of the subject Incident Report.  *Id*., Ex. H at pp. 4-5.  Also in

accordance with BOP policy, during his time in SHU, Plaintiff was subjected to periodic urinalysis

testing.  *Id*. at ¶ 11 & Ex. J (docketed as Dkt. No. 29-7) at pp. 16-20.

On July 28, 2009, a "Referral of an Inmate Criminal Matter for Investigation" was completed

by Defendant Helms, who is a member of the Special Investigations Section ("SIS") Department,

and the matter was referred to the United States Attorney's Office.  *Id*., Ex. F at p. 21.  On February

10, 2010, a grand jury in the Northern District of New York issued an Indictment charging Plaintiff

with violating 18 U.S.C. §§ 1791(a)(2) and (b)(3), for knowingly possessing "a prohibited object;

to wit, marijuana, a schedule I controlled substance."  *Id*., Ex. B (docketed as Dkt. No. 29-6) at p.

6; *see also United States of Am. v. Brobston*, Case No. 8:10-CR-73 (FJS) (N.D.N.Y.).  On March

4, 2010, a Writ of *Habeas Corpus Ad Prosequendum* was issued, and on March 16, 2010, Plaintiff

was released from Ray Brook to the United States Marshals Service for prosecution of this criminal

charge.  VanWeelden Decl., Ex. C & D (docketed as Dkt. No. 29-6) at pp. 7-10.  Plaintiff thereafter

appeared before the undersigned for his Initial Appearance and Arraignment, where, after being

advised of his rights, he pled not guilty and waived his right to a detention hearing.  *See United

States of Am. v. Brobston*, Case No. 8:10-CR-73, Min. Entry, dated Mar. 17, 2010.  Plaintiff was

remanded to the custody of the U.S. Marshals and was held at the Albany County Correctional

Facility.  *Id.*, Dkt. No. 3.  On July 8, 2010, Plaintiff pled guilty to the one count Indictment with no

plea agreement in place.  *Id.*, Dkt. No. 19 (Change of Plea Hr'g Tr.).  On December 1, 2010, Plaintiff

was sentenced to be imprisoned for a term of four months to run consecutively with the current

sentence, with three years supervised release to follow.  *Id.*, Dkt. No. 15.  Plaintiff filed a Notice of

Appeal of that Judgment, but subsequently withdrew such appeal.  *Id.*, Dkt. Nos. 16 & 20.

In the interim, on February 8, 2010, Plaintiff filed a Petition for a Writ of *Habeas Corpus*

in this District challenging his administrative SHU detention.[7]  *See Brobston v. Schult*, 9:10-CV-145

(N.D.N.Y.) (JKS), Dkt. No. 1, Pet.  On March 3, 2011, the Honorable James K. Singleton, Visiting

United States District Judge, issued a Dismissal Order noting first that Plaintiff's Petition

complaining about the conditions of his confinement should have been brought as a action pursuant

to 42 U.S.C. § 1983 and that such an action had already been brought by Plaintiff in this District.

*Id.*, Dkt. No. 20 at pp. 3-4 (referring to the current case).  Judge Singleton further found that to the

extent the case is properly brought as a *Habeas* Petition, the Petition should be denied because

Brobston failed to exhaust his administrative remedies and failed to show good cause for such

failure.  *Id.* at p. 5.  He further found that the Petition was moot because the relief sought in that

action was Brobston's release from administrative SHU confinement at FCI Ray Brook, which had

been accomplished during the pendency of the Petition when Brobston was transferred from Ray

Brook to Albany County Jail pending the criminal prosecution.  *Id.* at pp. 5-6; *see also supra* note

7.  For all these reasons, the Petition was dismissed without prejudice to Brobston continuing his

---

[7] The instant civil rights action was filed on March 3, 2010, while Plaintiff was still at FCI Ray Brook.  As noted above, on March 16, 2010, by Writ, Plaintiff was transferred from Ray Brook to U.S. Marshal custody for purposes of the criminal prosecution.  On March 17, 2010, the day after appearing before the undersigned regarding this criminal prosecution, Brobston submitted a Notice of Change of Address in his *Habeas* case, noting that his updated address was at Albany County Jail.  *Brobston v. Schult*, 9:10-CV-145 (N.D.N.Y.) (JKS), Dkt. No. 5.

civil rights action.  *Id*. at p. 6.

## II.  DISCUSSION

### A.  Standard of Review – Rule 56(b)

The Defendants have moved for dismissal of the Complaint pursuant to FED. R. CIV. P. 12(b)(6), and in the alternative have moved for summary judgment, pursuant to FED. R. CIV. P. 56. Dkt. No. 18-1.  In moving for summary judgment, the Defendants submitted various documents outside the pleadings, which have been considered by the Court.  It is within a court's discretion to convert a motion filed under Rule 12(b) and (c) into a motion seeking summary judgment when matters outside of the pleadings have been presented and accepted by the court.  *Baum v. Northern Dutchess Hosp.*, 764 F. Supp. 2d 410, 416 (N.D.N.Y. Jan. 24, 2011) (citing *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566 (2d Cir. 2005)) (citations omitted).  In light of this additional proof, and because Plaintiff also had notice and an opportunity to submit his own evidence, this Court has decided to proceed under the summary judgment standard of review.

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. Rule 56(a).  The moving party bears the initial burden through the production of admissible evidence to establish that no genuine dispute of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This Court must view the evidence in the light most favorable to the party opposing the motion.  *Id*. at p. 323.

If the moving party meets this initial burden, the nonmoving party must then set forth evidence demonstrating that there is a genuine issue of material fact.  *Id*. at p. 324; *see also Salahuddin v. Goord*, 467 F.3d 263, 273 (2d. Cir. 2006).  "Though pro se plaintiffs are entitled to

special latitude when defending against summary judgment motions, they must do more than simply show that there is some metaphysical doubt as to the material facts." *Hooks v. Howard*, 2010 WL 1235236, at *2 (N.D.N.Y. Mar. 30, 2010) (quoting *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Bald assertions, completely unsupported by evidence, will not satisfy the non-movant's burden. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).  In order to defeat a motion for summary judgment, the nonmoving party must properly address the movant's assertion of fact, and cannot rest "merely on allegations or denials" of the facts submitted by the movant. Fed. R. Civ. P. 56(e); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case.").  Rather, the opposing party must produce "specific facts" that influence "a reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  "This is true even when the issue is exhaustion." *White v. Ercole*, 2009 WL 602890, at *5 (S.D.N.Y. Mar. 3, 2009).

When considering a motion for summary judgment, the trial court's duty "is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Furthermore, a court will grant summary judgment "only when reasonable minds could not differ as to the import of evidence." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

### B. *Bivens* Cause of Action

"*Bivens* established that the victims of a constitutional violation by a federal agent [acting under color of federal authority] have a right to recover damages against the official in federal court

despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006).

The Second Circuit has recognized that "*Bivens* actions are not significantly dissimilar to claims brought under §§ 1981 and 1983 in terms of the interests being protected, the relief which may be granted, and the defenses which may be asserted." *Taverez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) (citation omitted). Thus it has been held that 42 U.S.C. § 1983 law is applicable to *Bivens* actions "[b]ecause the two actions share the same practicalities of litigation." *Id.* at 110 (internal quotation marks and citation omitted). Furthermore, "[b]ecause the doctrine of *respondeat superior* does not apply in *Bivens* actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation." *Thomas v. Ashcroft*, 470 F.3d at 496 (citation omitted) (emphasis in original).

## C. Exhaustion of Administrative Remedies

In seeking dismissal of this action, Defendants assert the affirmative defense that Plaintiff has not exhausted his available administrative remedies prior to bringing this action. Dkt. No. 29-1, Defs.' Mem. of Law, at pp. 10-18. Plaintiff maintains that on numerous occasions, his attempts to fully exhaust his administrative remedies were thwarted by all of the Defendants at different points in time. Compl. at ¶¶ 13-18 & 20-21; Dkt. No. 34, Pl.'s Aff./Mot., at ¶ 8.

The Supreme Court held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). Prisoners must exhaust all available

"administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 734 (2001)).

The Administrative Remedy Program is comprised of a four-step procedure set forth by the BOP.  Inmates are required to use the Administrative Remedy program "in good faith and in an honest and straightforward manner."  28 C.F.R. § 542.11(b).  First, the inmate must submit the issue of concern informally to staff, and staff must take measures to informally resolve the issue.  *Id*. at § 542.13(a).  Second, if the issue cannot be resolved informally, the inmate must submit a formal written Administrative Remedy Request, on a designated form, within twenty days of the event giving rise to the complaint.[8]  *Id*. at § 542.14(a).  If the inmate believes the issue is sensitive such that his/her safety or well-being would be placed in danger, the inmate may circumvent the initial filing at the institution by submitting the request directly to the appropriate Regional Director.[9]  *Id*. at § 542.14(d)(1).  Third, if the formal written request is denied, an unsatisfied inmate may submit an Appeal, on a designated form, to the appropriate Regional Director within twenty calendar days of the date the Warden signed the response.  *Id*. at § 542.15(a).  Fourth, an inmate may appeal a negative decision from the Regional Director to the General Counsel within thirty days of the date the Regional Director signed the response.  *Id*.  Appeal to the General Counsel is the last administrative appeal and once exhausted, legal action may commence.

The Second Circuit recognized that while PLRA's exhaustion requirements are mandatory,

---

[8] The inmate must obtain the grievance form from his/her correction counselor.  *See* 28 C.F.R. § 542.13(c)(1).

[9] The inmate must clearly write "sensitive" on the request, and further explain the reason for not submitting the request at his/her institution.  *See* 28 C.F.R. § 542.14(d)(1).  "If the Regional Administrative Remedy Coordinator agrees that the [r]equest is sensitive, the [r]equest shall be accepted.  Otherwise, the [r]equest will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the [r]equest."  *Id*.

certain caveats may apply. *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (citation omitted). "[A] three-part inquiry is appropriate where a prisoner plaintiff seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA[.]" *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). First, depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether such procedures were actually "available" to the prisoner. *Abney v. McGinnis*, 380 F.3d at 667. Second, "[t]he court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own action inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill v. New York*, 380 F.3d at 686 (citing *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004) & *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004)). Third, the Second Circuit has found that "there are certain 'special circumstances' in which . . . the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004). "The effect of such justification is that, though the administrative remedies are no longer available for reasons of timing or other procedural restrictions, such restrictions cannot serve to keep the plaintiff's suit from proceeding." *Id.*

Recently, the Second Circuit ruled that a prisoner is not entitled to a jury trial when there is a factual dispute regarding administrative exhaustion. *Messa v. Goord*, __ F.3d __, 2011 WL 3086827 (2d Cir. July 26, 2011) (joining five other Circuit Courts in holding that the Seventh Amendment guarantee to a jury trial does not extend to the "threshold issue[s] that *courts* must address to determine whether litigation is being conducted in the right forum at the right time"

(emphasis and alterations in original) (quoting *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010)).

As in the *Messa* case, currently before us are issues of fact and matters of credibility with regard to Plaintiff's compliance with the PLRA's exhaustion mandate. Plaintiff asserts that while in administrative detention, he requested that he be provided with his legal work, but was denied. Compl. at ¶ 20 & Ex. 7. Four months later, he was finally furnished with his legal work. *Id*. at ¶ 21. According to Plaintiff, by the time he was able to submit the correct forms, they were denied as untimely. *Id*. at ¶ 28. Plaintiff asserts that his subsequent requests for grievance forms were also denied by various Defendants and that some of the complaints he filed were not answered in a timely fashion. *Id*. at ¶¶ 31-35, 47, & 52-53. Defendants categorically deny, under oath, that they ever denied Plaintiff the proper forms or otherwise impeded his efforts to properly exhaust his administrative remedies. They further suggest that Plaintiff could have sought the proper forms from any number of staff members who made regular rounds in SHU. *See* Van Weelden Decl. at ¶¶ 39-40; Sepanek Decl. at ¶ 9. Under such circumstances, we would be required to hold a fact-finding hearing prior to submitting any of Plaintiff's substantive claims to a jury. However, as explained more fully below, because Plaintiff's claims clearly lack merit, there is no need for this Court to exert further judicial resources in holding a hearing to determine whether Plaintiff's admitted failure to fully exhaust his administrative remedies should be excused.

### D. Eighth Amendment

In his Complaint, Plaintiff asserts that on July 6th and 9th, his requests for toilet paper were denied by Defendants Duckett and Hensley. The shortage of toilet paper was resolved on July 6th after another inmate provided Plaintiff with a spare roll to use. On July 9th, Plaintiff did not have access to toilet paper for approximately an hour and a half, and ended up soiling himself. Much of

Brobston's Complaint focuses on perceived retaliation and his alleged attempts to file multiple grievances, and thus, it is unclear whether Plaintiff raises an Eighth Amendment claim with regard to the deprivation of toilet paper.  For example, in the Causes of Action portion of his Complaint, he does not cite this incident as an Eighth Amendment violation, and in this vein, the Complaint can be read as raising this issue solely as a means of providing background for his many retaliation claims.  But, we are mindful that within the Complaint, he includes a paragraph that seems to implicate the Eighth Amendment.  Compl. at ¶ 11.  Thus, after liberally construing Plaintiff's Complaint, we find that a discussion of the Eighth Amendment is apropos.

In order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege that (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference."  *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996)).

In *Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002), the Second Circuit set out in detail the requirements that a plaintiff must prove in order to make out a claim that the conditions of his confinement violated the Eighth Amendment:

> Under the Eighth Amendment, States must not deprive prisoners of their "basic human needs — *e.g.*, food, clothing, shelter, medical care, and reasonable safety."  *Helling* [*v. McKinney*], 509 U.S. [25,] 32 [(1993)] (citation and internal quotation marks omitted).  Nor may prison officials expose prisoners to conditions that "pose an unreasonable risk of serious damage to [their] future health."  *Id*. at 35. Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency.  *Id*. at 35-36; *Rhodes* [*v. Chapman*], 452 U.S. 337[,] 347 [(1981)].
>
> Concerning the "subjective" requirement, the Supreme Court has explained that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of

and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer* [*v. Brennan*], 511 U.S. [825,] 837 [(1994)].

*Phelps v. Kapnolas*, 308 F.3d at 185-86.

"Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim." *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).  In determining whether a condition of confinement was objectively serious, courts consider the length of the deprivation and the potential for harm.

Under certain circumstances, the deprivation of toiletries, like toilet paper, can rise to the level of unconstitutional conditions of confinement.  *See Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) (quoted in *Reeder v. Hogan*, 2010 WL 3909050, at *7 (N.D.N.Y. Sept. 30, 2010)).  Yet, courts in this Circuit have consistently held that an *occasional* or *temporary* deprivation of toilet use does not constitute an extreme deprivation of a basic human need or necessity of life.  *Jones v. Marshall*, 2010 WL 234990, at *3 (S.D.N.Y. Jan. 19, 2010) (citing cases in support of the finding that the denial of the right to use the bathroom for ninety minutes did not "establish the existence of an objective injury for purposes of an Eighth Amendment claim"); *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 488-89 (N.D.N.Y. 2009) (citing cases for the proposition that a "mere denial of the toilet paper and soap on several occasions for a few days is, while dismaying and unprofessional, not a denial of 'the minimal civilized measure of life's necessities,' as required by *Farmer* [*v. Brennan*], 511 U.S. at 834"); *Kee v. Hasty*, 2004 WL 807071, at *26 n.24 (S.D.N.Y. Apr. 14, 2004) (citing *McNatt v. Unit Mgr. Parker*, 2000 WL 307000, at *4 (D. Conn. Jan. 18, 2000)).  In rendering these assessments, courts consider whether the deprivation of toilet use, or toilet paper, resulted in

unsanitary conditions that posed a significant risk to an inmate's health. *See Whitted v. Lazerson*, 1998 WL 259929, at *1 & 2 (S.D.N.Y. May 21, 1998) (finding no Eighth Amendment violation where inmate was deprived of the use of toilet for approximately ninety minutes requiring him to "hold his bowel movement at painful levels, and at time partially urinate[] and defecate[] in his clothing"); *Gill v. Riddick*, 2005 WL 755745, at *16 (N.D.N.Y. Mar. 31, 2005) (finding no Eighth Amendment violation when inmate urinated on himself as a result of the denial of the use of the bathroom during a trip to another prison).

In the circumstances before us, the lack of available toilet paper on July 6th and the temporary denial of toilet paper on July 9th do not objectively rise to the level of a constitutional violation. But, even if we were to find that, objectively, the denial of toilet paper was sufficiently serious, in light of the uncontested facts, it is clear that Defendants did not act with the requisite state of mind. Instead, by all accounts, Defendants took affirmative action to cure the toilet paper deficiency. Furthermore, there is no indication that Plaintiff was forced to stay in the soiled clothes, since, by his own account, he was able to shower and change his clothes immediately. Thus, to the extent stated in the Complaint, we recommend **granting** Defendants' Motion for Summary Judgment on Plaintiff's Eighth Amendment claim.

### E.  Retaliation

The true crux of Plaintiff's Complaint revolves around the notion that after he complained about the lack of toilet paper in UNICOR, and possibly because he complained about the BOP change in policy regarding prisoner movement during and after UNICOR lunch breaks, various Defendants retaliated against him. Such examples of retaliation include 1) Defendant Peterson's search while Plaintiff was on the UNICOR loading dock; 2) Defendant Helms's subsequent

*-16-*

investigation; 3) forcing Plaintiff to submit to urine testing while in administrative detention; and 4) the hindrances imposed by all Defendants in blocking or delaying Plaintiff's attempts to file formal complaints while in SHU.

The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988). Claims of retaliation, like those asserted by Plaintiff, find their roots in the First Amendment. Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *Gill v. Pidlypchak*, 389 F.3d 379, 381-83 (2d Cir. 2004).

Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d at 872 (citation omitted); *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (citation omitted)); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)

To state a First Amendment claim for retaliation, an inmate must demonstrate that (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v.*

*Pidlypchak*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d at 492); *see also Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002).

Here, Plaintiff satisfies the first prong because he engaged in constitutionally protected activity *vis a vis* filing grievances about the lack of toilet paper in UNICOR and complaining about the BOP change in policy.  However, it is not entirely clear whether Plaintiff has satisfied the second and third prongs regarding adverse action taken against him and causal connection.  It is worth noting that during the time Plaintiff alleges that various Defendants were retaliating against him, these same staff/team members were working on his behalf to have him transferred to a facility closer to his home.  It was only after the July 27th incident that such effort was terminated.  *See* Sepanek Decl. at ¶ 5 & Ex. B.  It seems that Plaintiff seeks to label the search, and possibly the subsequent administrative confinement, urine testing, and criminal prosecution, as adverse action, but he fails to make a clear connection between his written complaints about the lack of toilet papers and these acts.  Conspicuously absent from his Complaint are the facts surrounding the search.  In his Complaint, Plaintiff would have us believe that for no reason, he was singled out and searched and then put into administrative detention without cause.  At no point in his Complaint does he mention that marijuana was found on his person during that search.  Yet, after reviewing the Defendants' moving papers, we learn that Plaintiff had been suspected of possessing or dealing drugs, which was the basis for the search,[10] and during such search, Plaintiff was observed attempting to force a cellophane wad down the drain.  After determining that the substance in the

---

[10] In his Declaration, Defendant Jon Hensley, Superintendent of Industries and Education, indicated that on July 27, 2009, he became aware that Plaintiff was selling drugs out of the factory restroom. Dkt. No. 29-8, Jon Hensley Decl., dated Nov. 9, 2010, at ¶ 11.  He does not share with the Court how he came to possess such information.  Hensley says that he informed Defendant Peterson of this and asked him to look into the allegation, which resulted in the visual search. *Id.*

cellophane was marijuana, the incident was referred to the United States Attorney's Office for prosecution. At no time does Plaintiff claim that the drugs found that day were not his nor that they were planted there by the Defendants. Indeed, he would be foreclosed in making such argument in light of his guilty plea to the crime of possession during his criminal prosecution.

Furthermore, it is clear from the Defendants' submissions that even if a retaliatory animus were present, based on their suspicion and because of the items discovered during the search, they would have taken the same steps, *i.e.*, administrative confinement and referral for prosecution. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977), for the proposition that in situations where the defendant's actions are the result of both retaliatory and legitimate reasons, the burden shifts to the defendants to show that they would have taken the same action absent the retaliatory motive); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (cited in *Carpio v. Walker*, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15,1997)); *see also Gayle v. Gonyea*, 313 F.3d at 682 (defendant may successfully meet this burden of justification with regard to a particular punishment by demonstrating that "plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report" (internal quotation marks and citations omitted)).

The undisputed facts show that on July 27th, the search of Brobston, and subsequent lab testing, revealed he possessed marijuana. While a BOP Incident Report was written by Defendant Peterson that same day, the BOP investigation into this matter was suspended pending referral to the United States Attorney's Office. Van Weelden Decl. at ¶ 7 & Exs. F & G. In accordance with BOP policy, because of the pending investigation, Brobston was not furnished with a copy of the Incident Report. *Id*. at ¶ 10 & Ex. H. Also in accordance with BOP policy, Plaintiff was placed in

*-19-*

administrative detention pending the criminal investigation and was subjected to periodic urinalysis. *Id*. at ¶¶ 8 & 11, Exs. H, I, & K.  The following date, the matter was referred for investigation, thus, the timeline of such prosecution was no longer with any member of the BOP, but rather with the United States Attorney's Office.  As we know, eventually, Plaintiff was indicted and pled guilty to the charge of Knowingly Possessing a Prohibited Object.  Thus, it is clear from the undisputed evidence that even if a retaliatory motive existed, and we do not find that to be the case, the search, investigation, administrative detention, and urine testing were legitimate and in accordance with BOP policy.  Thus, we recommend that these claims of retaliation be **dismissed**.

Lastly, with regard to Plaintiff's claim that all nine Defendants retaliated against him by interfering with his ability to file administrative grievances, we note that such claim lacks the vital causal connection.  The constitutionally protected activity at issue is the complaints Plaintiff filed with regard to the shortage of toilet paper in UNICOR.  Those complaints were immediately addressed by UNICOR staff in the form of providing additional toilet paper and by Defendant Hensley, who issued a written response to Plaintiff's complaint indicating that he had fully investigated the matter and was assured that for the dates in question, UNICOR staff ensured that there was an adequate supply of toilet paper.  It is not clear why Plaintiff believes that his complaints upset any of the nine Defendants that they would engage in acts of retaliation spanning over seven months.  By all accounts, the complaints were resolved amicably.  And, as noted above, prior to July 27th, these same staff members were working on Plaintiff's behalf to grant his request for a transfer.  Having failed to assert a causal connection between the alleged retaliatory acts and his complaints about the lack of toilet paper, we recommend that this claim be **dismissed**.

*-20-*

## F.  Qualified Immunity

In light of the above analysis wherein this Court has assessed that no constitutional violations occurred, it is unnecessary for us to consider this affirmative defense put forth by Defendants. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").  However, should there be any doubt as to the above recommendations, it is clear based upon the undisputed evidence and Declarations that the each Defendant would be entitled to qualified immunity for each of the above claims because "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[], could conclude that it was objectively unreasonable for the defendant[s] to believe that [t]he[y] w[ere] acting in a fashion that did not clearly violate an established federally protected right." *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997) (citations omitted).

## G.  Service

Under FED. R. CIV. P. 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period.  Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m).[11] Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative after notice to the plaintiff, to dismiss the case without prejudice as to that defendant.  *Id*.

Defendant Darrah has not been properly served in this matter.  Apparently, at the time service was attempted, Ms. Darrah had already retired from the BOP.  Dkt. Nos. 18 & 29.

---

[11] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

*-21-*

Nevertheless, as noted above, Plaintiff's claims regarding the shortage of toilet paper and various forms of retaliation should be dismissed against the Defendants, including Defendant Darrah, because he has not asserted a cognizable claim.

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss/for Summary Judgment (Dkt. No. 29) should be **GRANTED** and this entire action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   September 28, 2011
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-22-*